UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **No. 3:19-CV-1824** |
| **ex rel. DIVYAKANT PATEL and** | : | |
| **HARSHAD PATEL,** | : | **(Munley, J.)** |
| | : | |
| **Plaintiffs** | : | **(Caraballo, M.J.)** |
| | : | |
| **v.** | : | |
| | : | |
| **THE FIDELITY DEPOSIT &** | : | |
| **DISCOUNT BANK, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## REPORT & RECOMMENDATION

### I.  Introduction

Defendant Fidelity D&D Bancorp, Inc. ("FDD Bancorp") seeks to recover $96,307.75 in attorneys' fees and costs, after prevailing in a *qui tam* action filed by plaintiff-relators Harshad Patel and Divyakant Patel.  As one of several defendants in this now-shuttered litigation, FDD Bancorp posits that the alleged False Claims Act ("FCA") violations were limited to its codefendant and subsidiary, Fidelity Deposit & Discount Bank, thus rendering any claims against parent holding company FDD Bancorp, premised on that corporate structure alone, a frivolous, vexatious, and harassing endeavor.

1

Although the claims against FDD Bancorp did not survive the motion to dismiss stage of this litigation, the failure to assert a well-pleaded claim for relief against a defendant does not render the complaint frivolous per se. Moreover, as the relators offered a cognizable rationale for suing FDD Bancorp, albeit an ultimately unsuccessful one, these circumstances fall short of the exacting burden placed on a defendant to establish an action is clearly frivolous or vexatious, or primarily brought for the purpose of harassment. Accordingly, and for the reasons set forth below, it is recommended that the district court deny FDD Bancorp's motion for attorneys' fees.

II.    <u>**Background**</u>

After over five years of contested, and oftentimes convoluted litigation, this *qui tam* action ended with the relators dismissing the case before the charging instrument was finalized or any defendant filed an answer. As the Court assumes the parties' familiarity with the litigation, only the procedural history germane to the instant motion is set forth below; a labyrinthine exercise in and of itself.

On October 18, 2019, relators Harshad Patel and Divyakant Patel filed a complaint alleging that defendants Fidelity Deposit & Discount

2

Bank, FDD Bancorp, Ankim Shah, Marina Capital LLC, and 1101 Northern Boulevard LLC defrauded the Small Business Administration ("SBA") in connection with a loan program, among other things. *See generally* Doc. 1. The SBA loan at issue related to the purchase and renovation of a hotel facility by the Patels and their former business partner, Shah, with Fidelity Deposit & Discount Bank serving in a financing capacity. *Id*. Fidelity Deposit & Discount Bank and its holding corporation, FDD Bancorp, were referenced collectively throughout the complaint's allegations. *Id*. at ¶ 8.

The relators filed an amended complaint on February 18, 2020, containing substantially similar allegations. *See generally* Doc. 6. Again, Fidelity Deposit & Discount Bank and FDD Bancorp were referenced collectively throughout the amended complaint's allegations. *Id*. at ¶ 8. Specifically, the relators alleged that Fidelity Deposit & Discount Bank and FDD Bancorp, as the financing entities for the relators' underlying hotel purchase and renovation venture, conspired with other defendants to defraud the SBA in connection with a loan for that project. *Id* . at ¶¶ 2–5.

In June and July 2020, the United States declined to intervene, and the case was unsealed. Docs. 12–13. Both Fidelity Deposit & Discount Bank and FDD Bancorp were subsequently represented by the same attorneys throughout the course of the ensuing litigation. Docs. 17, 19, and 27.

On October 8, 2020, Fidelity Deposit & Discount Bank and FDD Bancorp collectively moved to dismiss all claims against them. Doc. 28. Among the grounds advanced in support of dismissal, FDD Bancorp contended that, as a holding company of subsidiary Fidelity Deposit & Discount Bank, it did not itself engage in any banking activities. *Id.* at 18–19. Unlike Fidelity Deposit & Discount Bank, FDD Bancorp was neither a party to the documents referenced in the amended complaint, nor specifically alleged to have engaged in any of the false statements or fraudulent conduct forming the premises for relators' FCA claims. *Id.* at 19–20. Thus, FDD Bancorp sought dismissal, reasoning that relators could not "advance a prima facie cause of action." *Id.* at 21. The Court subsequently denied the motion to dismiss, without reaching the merits, to afford relators an opportunity to seek leave to amend their complaint. Doc. 38.

On November 25, 2020, relators moved for leave to file a second amended complaint. Doc. 45. The proposed pleading contained substantially similar allegations against Fidelity Deposit & Discount Bank and FDD Bancorp, again charging them as collective entities. Doc. 46 at 7. In opposition to the motion, FDD Bancorp reiterated its contention that, as nothing more than the parent holding company of Fidelity Deposit & Discount Bank, it should be dismissed as a defendant. Doc. 48 at 23–25. Relators did not address FDD Bancorp's contention in their reply brief. Doc. 53.

In consideration of both parties' repeated failures to comply with the local rules, the Court denied relators' motion for leave to amend, albeit without prejudice. Doc. 56. The merits of the motion to dismiss FDD Bancorp remained undecided. The Court simultaneously encouraged defendants to concur in a future motion for leave to amend that comported with the local rules, and reserve their merits arguments for subsequent motions to dismiss. *Id*. at 7.

The parties followed the Court's guidance and, on May 5, 2021, relators re-filed their second amended complaint, pursuant to a concurred-in motion granted by the Court. Docs. 57–59. This pleading

omitted many of the proposed changes in the original second amended complaint but, pertinently, contained substantially similar collective allegations against both Fidelity Deposit & Discount Bank and FDD Bancorp. Doc. 59 at 7–8. FDD Bancorp followed suit and renewed its motion to dismiss. Doc. 62. Again, FDD Bancorp contended that as a holding company of subsidiary Fidelity Deposit & Discount Bank, it did not itself engage in any banking activities, and thus could not have engaged in the conduct forming the premises for relators' FCA claims. *Id.* at 20–22.

In response, relators leveraged corporate veil-piercing principles to contend that FDD Bancorp remained an appropriate defendant. Doc. 68 at 31. Specifically, relators averred "that D&D Bancorp, a holding company, and Fidelity Deposit and Discount Bank, have the same directors and senior managers. Given the size of the loans [at issue] (over $8 million in total), it is plausible that the holding company was involved." *Id.* Relators claimed that absent discovery, they could not determine whether any personnel of Fidelity Deposit & Discount Bank who allegedly participated in the conduct at issue did so "in their capacity as an officer or agent of the holding company." *Id.* In reply,

FDD Bancorp maintained that those conclusory allegations fell short of basic pleading standards. Doc. 74 at 15.

Before the Court addressed the pending motions to dismiss, the relators sought leave to file a third amended complaint. Doc. 76. Through this pleading, relators sought to remedy several of the issues raised in the defendants' motions to dismiss, but FDD Bancorp's claim of corporate separateness, although acknowledged, went unaddressed. *Id.* at 5–7. Indeed, the proposed third amended complaint continued to treat Fidelity Deposit & Discount Bank and FDD Bancorp collectively, without any allegations discernibly specific to FDD Bancorp. Doc. 76-1.

On July 27, 2022, and following oral argument on the motions to dismiss (Doc. 90), the Honorable Martin C. Carlson issued a report and recommendation that the motions be granted in part and denied in part. Doc. 93. Of relevance to the instant motion, Judge Carlson recommended that FDD Bancorp be dismissed from the action. *Id.* at 42. Finding the second amended complaint and proposed third amended complaint "devoid of any well-pleaded facts describing the alleged involvement of" FDD Bancorp beyond its status as the holding

corporation of Fidelity Deposit & Discount Bank, Judge Carlson

reasoned:

> This incredibly cursory style of pleading simply will not do. It is axiomatic that the liability of a defendant in a civil lawsuit is entirely dependent upon the presence of well-pleaded allegations in the body of the complaint which plausibly state a claim against the defendants. Therefore, pleadings, like these proposed amended complaints, which simply list Fidelity D&D Bancorp, Inc., in the caption and introduction of the pleadings without setting forth any well-pleaded factual averments describing the defendant's involvement in actions which may plausibly give rise to False Claims Act liability are patently inadequate and compel dismissal of this defendant. Indeed, it has long been well-settled that a complaint which simply lists a party defendant but is "completely devoid of any accusation or indication that [the] defendant . . . was involved in the incidents upon which this civil action is based," fails to state a claim upon which relief may be granted.

*Id*. at 18–19 (quoting *United States ex rel. Brzozowski v. Randall*, 281 F. Supp. 306, 312 (E.D. Pa. 1968)).

Judge Carlson accordingly rejected the relators' veil-piercing contention, finding it legally meritless:

> In sum, in their current form, these amended complaints utterly fail to state a plausible claim against Fidelity D&D Bancorp, Inc. The amended complaints are devoid of any well-pleaded facts relating to this defendant's role in submitting any false claims. Furthermore, the wholly speculative proposition that the plaintiffs may be able to hold this defendant directly liable for the alleged conduct of a separate subsidiary merely by alleging that it is the holding company for that subsidiary flies in the face of "hornbook law that 'the

> exercise of the "control" which stock ownership gives to the stockholders ... will not create liability beyond the assets of the subsidiary.' "

*Id.* at 20–21 (quoting *United States v. Bestfoods*, 524 U.S. 51, 61–62 (1998)).  The relators did not raise any objections to the recommended dismissal of FDD Bancorp.  *See* Docs. 99–100.

On June 27, 2023, the Court adopted the report and recommendation with modifications.  Doc. 102.  In relevant part, it dismissed FDD Bancorp with prejudice, and ordered supplemental briefing on whether a third party, Clarks Summit Hospitality, LLC, should be deemed a necessary party to the litigation.  *Id.*  Relators' motion to file a third amended complaint was held in abeyance, pending resolution of the supplemental briefing.  *Id.*

In the ensuing months, relators and defendants Ankim Shah, Marina Capital LLC, and 1101 Northern Boulevard LLC sought and obtained several extensions of the supplemental briefing schedule, in consideration of ongoing global settlement discussions involving both this litigation and a reported case in New Jersey between only some of the parties.  Docs. 103–114, 116, 118–119, 122.  Fidelity Deposit & Discount Bank initially voiced no opposition to the requested

extensions, *see* Doc. 103, later clarifying that it was not a party to the settlement discussions or New Jersey litigation, and thus at risk of suffering prejudice from the ongoing delays. Doc. 120. For reasons unclear, counsel for Fidelity Deposit & Discount Bank also wrote on behalf of FDD Bancorp, *see id.*, even though the latter had been dismissed from the litigation, with prejudice, for approximately six months. Doc. 102 at 2.

On February 21, 2024, FDD Bancorp moved for attorneys' fees under 31 U.S.C. § 3730(D)(4), alleging that the realtors' claims against the holding company were frivolous, vexatious, and harassing. Doc. 123. In support of its motion, FDD Bancorp protested that the relators, despite being put on notice that FDD Bancorp had no personal involvement in the underlying dispute, failed to remedy that pleading deficiency when filing the second amended complaint. Doc. 127 at 8. FDD Bancorp also claimed that the relators continued to pursue their action against FDD Bancorp in the third amended complaint, and "refused to withdraw their Third Amended Complaint with the provisions advanced against" FDD Bancorp, Doc. 123 at 7–8, even though the pleadings were held in abeyance at the time, pending

10

supplemental briefing on joining Clarks Summit Hospitality, LLC to the action.  *See* Doc 102.

In response, the relators reiterated their contention, from litigating the motions to dismiss, that as FDD Bancorp and Fidelity Deposit and Discount Bank shared directors and senior managers, the holding company may have been involved in the underlying alleged fraud.  Doc. 130 at 16.  Relators bolstered this contention by averring that FDD Bancorp, as a "publicly traded holding company whose share price and ability to raise capital depends on Fidelity's operation," could have been adversely affected by a write-off of the underlying loans, given their magnitude.  *Id.*  Relators even proposed that, should discovery bear fruit, it might warrant the future reinstatement of FDD Bancorp in the action as a defendant.  *Id.* at 17.

On May 24, 2024, the Honorable Daryl F. Bloom issued a report recommending denial of the motion for attorneys' fees, as FDD Bancorp had failed to provide any evidence detailing its legal fees incurred.  Doc. 136.  The Court adopted the report and recommendation, and denied the motion for attorneys' fees, without prejudice.  Doc. 138.

On March 4, 2024, in the midst of the attorneys' fees litigation, and reportedly as a protective measure, *see* Doc. 125 at 1, relators filed a revised third amended complaint that removed all references to FDD Bancorp and added Clarks Summit Hospitality, LLC as a defendant, among other things. Doc. 126. Although Judge Bloom subsequently recommended that the motion for leave to file the third amended complaint be granted, Doc. 137, the relators moved to dismiss the entire action before the Court assessed the report and recommendation. Doc. 139. On June 25, 2024, following consent of the United States, Doc. 141, the Court dismissed the action, and closed the case. Doc. 142.

On July 1, 2024, FDD Bancorp renewed its motion for attorneys' fees. Doc. 143. Although the basis for the motion was substantively identical to the original motion for attorneys' fees, FDD Bancorp now provided supporting billing statements and attorney declarations. *Id.* at Exs. A–D. Specifically, FDD Bancorp seeks to recover $96,307.75, which constitutes an even half of the total $192,615.50 billed to Fidelity Deposit & Discount Bank and FDD Bancorp for the joint representation throughout the litigation. *Id.* at 10–11.

The motion for attorneys' fees was referred to the undersigned to prepare a report and recommendation. *See* Fed. R. Civ. P. 54(d)(2)(D) ("[T]he court . . . may refer a motion for attorney's fees to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter."). The motion is fully briefed and ripe for decision. No party other than FDD Bancorp has filed a similar motion.

## III. Discussion

The motion for attorneys' fees is premised primarily on Judge Carlson's report that the relators' second amended complaint and proposed third amended complaint were bereft of factual allegations specific to FDD Bancorp. Doc. 143 at 5–6. In other words, because the complaint lacked well-pleaded allegations detailing FDD Bancorp's involvement in the underlying scheme, relators necessarily pursued frivolous litigation. FDD Bancorp also highlights that the relators were notified in early, undecided motion practice of its status as a holding company that was neither a party to the documents referenced in the amended complaints, nor specifically involved with any of the alleged false statements or fraudulent conduct. Doc. 144 at 15–16. Despite

that notification, however, relators included FDD Bancorp in successive amended pleadings—a course of conduct deemed vexatious. *Id.*

In response, the relators offer little to support their position, and instead spend much of their opposition regurgitating the allegations contained in their now-dismissed complaint to bolster the bona fides of their lawsuit in general; averments in which FDD Bancorp was, and remains, conspicuously absent. Doc. 145 at 2–12. Germane to this motion, relators reiterate their failed opposition to FDD Bancorp's motion to dismiss. Namely, they contend that the underlying loans were of such magnitude that a write-off would have yielded an adverse effect on FDD Bancorp, a publicly traded company. Thus, as FDD Bancorp and Fidelity Deposit & Discount Bank shared directors and managers, relators posit this is a reason to believe that the holding company was involved in the alleged scheme. *Id.* at 20–21. Relators also reiterated their need for discovery to confirm that suspected link. *Id.*

Although that position was rejected by the Court when dismissing FDD Bancorp from this litigation in the Rule 12 context, it nonetheless evinces a plausible rationale for including the holding company as a

14

defendant in the initial pleadings. Perhaps more importantly, a review of the record and information presented by FDD Bancorp does not identify evidence sufficient to deem relators' *qui tam* action clearly frivolous or vexatious, or one brought for the primary purpose of harassment.

Under the FCA, where the government, as here, declines to intervene, "the court may award to the defendant its reasonable attorneys' fees and expenses if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." 31 U.S.C. § 3730 (d)(4). Thus, the Court's discretion to award fees hinges on prerequisite findings "that (1) the government did not proceed in the action; (2) defendants prevailed in the action; (3) the claim was clearly frivolous, clearly vexatious, or primarily for the purposes of harassment; and (4) the requested fees are reasonable." *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 528 F. Supp. 2d 533, 537 (E.D. Pa. 2007). In evaluating those factors, precedent applicable to attorneys' fees awards in civil rights actions provides guidance. *Id.* at 543 n.12 (collecting cases and legislative history);

*United States ex rel. Woodruff v. Haw. Pacific Health*, 2009 WL 734057, at *7 (D. Haw. 2009) (same).

Here, under the first two steps of the inquiry, the parties do not dispute that the government declined to intervene, or that FDD Bancorp was a prevailing party. Obtaining attorneys' fees, however, imposes a far more demanding burden than that preliminary showing. *Druding v. Care Alternatives, Inc.*, 2019 WL 337580, at *3 (D.N.J. 2019). And "the standard for awarding attorney's fees to prevailing defendants is more stringent than that for awarding fees to prevailing plaintiffs." *Barnes Found. v. Twp. of Lower Merion*, 242 F.3d 151, 157–58 (3d Cir. 2001). Namely, under the third step of the inquiry, although the prevailing defendant need not "establish that the plaintiff had subjective bad faith in bringing the action in order to recover attorney's fees," *id.* at 158, it must show that the FCA claim was *clearly* frivolous or vexatious, or *primarily* for harassment purposes. 31 U.S.C. § 3730(d)(4).

FDD Bancorp fails to meet that exacting standard. Critically, FDD Bancorp does not aver that the entire lawsuit and its premises were frivolous; only to the extent relators advanced claims against FDD

16

Bancorp.[1]  The Court thus is faced with a relatively narrow issue—whether the minimal allegations against FDD Bancorp, and proffered reasons for including it as a defendant, were clearly frivolous or vexatious, or primarily for harassment purposes—and need not address the broader merits of the litigation.

"A claim is frivolous if it is utterly lacking in legal merit and evidentiary support." *United States ex rel. J. Cooper & Assocs., Inc. v. Bernard Hodes Grp., Inc.*, 422 F. Supp. 2d 225, 238 (D.D.C. 2006); *see also Frivolous*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("Lacking a legal basis or legal merit; manifestly insufficient as a matter of law"). "[T]he term 'meritless' is to be understood as meaning groundless or without foundation, rather than simply that the plaintiff has ultimately

---

[1] In its reply brief, FDD Bancorp appears to contend for the first time that the action against Fidelity Deposit & Discount Bank, and possibly all defendants, was brought in bad faith to gain leverage over certain defendants in an unrelated New Jersey state litigation. Doc. 146 at 3–4. Aside from the Court's general declination to consider arguments raised for the first time in reply briefs, *see Omnipoint Commc'ns Enters., L.P. v. Zoning Hearing Bd. of Easttown Twp.*, 331 F.3d 386, 399 n.15 (3d Cir. 2003), the New Jersey litigation is not before the Court, nor does the record offer any information about that litigation's substance or relation to the dismissal of this *qui tam* action, beyond general references to global settlement discussions. *See* Docs. 105, 107, 113, 116, 120, 122, 125; *see also Atkinson*, 528 F. Supp. 2d at 546 n.14 (refusing to consider "multiple government investigations outside of this litigation [that] are not before the court and are inconclusive at best regarding the objective strength of the claims or [relator's] subjective intent in pursuing them.").

lost his case." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978). Among the non-exhaustive factors to consider when determining frivolity are "whether the plaintiff established a prima facie case . . . the trial court dismissed the case prior to trial . . [and] the trial court has made a finding that the suit was frivolous." *Barnes*, 242 F.3d at 158.

FDD Bancorp has not met its burden of establishing that the relators' claims were clearly frivolous. Although the Court adopted Judge Carlson's reasoning that the complaint lacked well-pleaded allegations specific to FDD Bancorp, and his rejection of relators' veil-piercing theory, the failure to survive a Rule 12(b)(6) motion to dismiss does not render a litigation frivolous per se. *See Woodruff*, 2009 WL 734057, at *7 (failing to conduct sufficient factual investigation and "to plead fraud with particularity does not mean that the claims were frivolous"). Indeed, although Judge Carlson found relators' pleadings against FDD Bancorp "incredibly cursory," and "patently inadequate," and its veil-piercing argument "speculative," he did not deem them frivolous, vexatious, or harassing. Doc. 93 at 18–21.

Moreover, relators offered reasons, both when litigating the motion to dismiss and now, to include FDD Bancorp as a defendant in this action. Namely, they posit that the loans underlying this litigation were of such magnitude that the risk of Fidelity Deposit & Discount Bank writing off those loans could have impacted its holding company, publicly traded FDD Bancorp. Doc. 145 at 16. Thus, as the two entities shared directors and senior managers, relators had a basis to aver that the holding company was complicit in the alleged fraud, given the logical financial incentives.

It matters not whether including those allegations in the complaint itself for purposes of opposing the motion to dismiss FDD Bancorp would have made any material difference in the outcome. Rather, the apparently uncontested facts—magnitude of loans, shared executives between the entities, and potential impact of a write-off on the publicly traded holding company—lands these circumstances short of a "speculative litigation based on personal belief without support in fact." *Atkinson*, 528 F. Supp. 2d at 544. Relators' rationale, though not particularly compelling or "meritorious in hindsight," is nonetheless plausible and reasonable enough that the Court cannot conclude the

19

claim against FDD Bancorp was "so unfounded as to meet the high standard required to award attorney fees" under the FCA. *Id.* at 543.

Moreover, the Court is mindful of the Supreme Court's cautionary warning to:

> [R]esist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. . . . no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

*Christiansburg*, 434 U.S. at 421–22. Particular to the *qui tam* context, awarding attorneys' fees to a prevailing defendant risks "dissuad[ing] the type of litigation that Congress has deemed beneficial," *Atkinson*, 528 F. Supp. 2d at 546, which is precisely why the standard to obtain them is so exacting.

That reasoning is particularly apt where, as here, the moving defendant does not attack the merits of the litigation as a whole, but only those aspects particular to FDD Bancorp. Awarding attorneys' fees to the sole defendant terminated from the action by dispositive motion,

when the Court permitted the litigation to proceed against all remaining defendants—and even entertained joinder of Clarks Summit Hospitality, LLC as an additional defendant—would risk triggering the very chilling effect forewarned by the Supreme Court. *Christiansburg*, 434 U.S. at 422.

And the efforts and corresponding resources expended by relators in pursuing this action likewise cuts against any allusion that they knew the claims against FDD Bancorp were frivolous. For four and one-half years, relators filed numerous amended complaints in an effort to close the pleadings, vigorously contested the defendants' motions to dismiss, and litigated other ancillary disputes, much of which occurred after the government declined to intervene. FDD Bancorp has not provided any evidence detracting from the logical inference that those extensive measures evince a good faith attempt to address a perceived injury through litigation. *See Atkinson*, 528 F. Supp. 2d at 545–46 (finding that relator's "willingness to expend considerable wealth pursuing the claim evidences its meritorious underpinnings.").

FDD Bancorp likewise fails to establish that the *qui tam* action was clearly vexatious or brought primarily for harassment purposes.

21

"Vexatious and harassing claims are those instituted maliciously or without good cause." *Atkinson*, 528 F. Supp. 2d at 544; *see also Woodruff*, 2009 WL 734057, at *6 (defining vexatious and harassing as "when the plaintiff pursues the litigation with an improper purpose, such as to annoy or embarrass the defendant."). "Evidence of vexatiousness or an intent to harass on the part of a plaintiff includes, but is not limited to, actions that deliberately delay the proceedings, attempts to relitigate a previously decided claim against the same defendant, the raising of new allegations in an effort to circumvent the arguments in a defendant's motion to dismiss, . . . and the inclusion of counts for which the available evidence 'defeat[s] any inference of a false claim.'" *Cooper*, 422 F. Supp. 2d at 238 (citing *United States ex rel. Herbert v. Nat'l Academy of Sciences*, 1992 WL 247587, at *8 (D.D.C. 1992) and quoting *United States ex rel. Mikes v. Straus*, 98 F. Supp. 2d 517, 527 (S.D.N.Y. 2000)).

FDD Bancorp has not met its burden of establishing that those factors exist here. Although its status as a holding corporation with no alleged involvement in the underlying fraud prevailed on the motion to dismiss, FDD Bancorp has not offered any evidence showing that its

inclusion as one of several defendants was the product of malice or to smear its public reputation. And a close review of the record fails to identify any indicia of vexatiousness or harassment.

To be sure, the relators pleaded allegations collectively against FDD Bancorp and Fidelity Deposit & Discount Bank through multiple iterations of the complaint. Docs. 1, 6, 46, 59, 76-1. And despite FDD Bancorp initially raising its status as an uninvolved holding company in a motion to dismiss the amended complaint, Doc. 28, relators failed to substantively modify their pleadings against FDD Bancorp in subsequent amended complaints. That issue, however, ultimately was not fully briefed and decided until the filing of the second amended complaint, while the third amended complaint remained pending. Docs. 59, 76-1, 93, 102. Up to that point, relators refuted FDD Bancorp's grounds for dismissal, and offered the rationale detailed above for including it as a defendant. Doc. 68 at 31.

Once Judge Mariani adopted the report and recommendation issued by Judge Carlson, however, and dismissed FDD Bancorp as a defendant, relators abandoned any further litigation against the holding company. Rather, while a motion for leave to file a third

23

amended complaint (one that still included FDD Bancorp as a defendant) was held in abeyance, pending briefing on whether to join Clarks Summit Hospitality, LLC as a defendant, relators filed a revised third amended complaint that removed FDD Bancorp as a defendant, to comply with Judge Mariani's order. Doc. 126.[2]

The Court finds no intent to harass FDD Bancorp in that sequence of events, which cuts directly against any allusion that relators engaged in the "pursuit of repetitious, unfounded litigation [that] is a hallmark of vexatiousness and results in an award of attorney fees." *Atkinson*, 528 F. Supp. 2d at 544. And at no point after Judge Mariani's order did relators attempt to revive the action against FDD Bancorp. *See Woodruff*, 2009 WL 734057, at *12 ("The key issue is whether the

---

[2] FDD Bancorp claims that the relators continued seeking liability in their third amended complaint and refused to withdraw the allegations against the holding company, even after Judge Mariani dismissed it from the action. Doc. 143 at 7–8. The docket, however, does not support that contention, as the litigation effectively was on hold pending lengthy delays in briefing whether Clarks Summit Hospitality, LLC, should be joined as a party. Docs. 102–114, 116, 118–119, 122. While the motion for leave to file a third amended complaint was held in abeyance, FDD Bancorp first sought attorneys' fees and asserted this contention. Doc. 123 at 7–8. In response, relators re-filed the third amended complaint, removing FDD Bancorp as a protective measure. Doc. 125 at 1. The reiteration of FDD Bancorp's contentions in the instant motion—and use of the present tense—may thus be attributable to copying and pasting the same text from the initial motion for attorneys' fees into the instant motion. *Compare* Doc. 123 at 7–8 *with* Doc. 143 at 7–8.

allegedly vexatious action raised issues that had already been litigated.").

Nor should the notice provided to relators that FDD Bancorp was not a proper party serve as grounds for establishing nefarious intent. Indeed, parties routinely seek dismissal of charges and litigations on the basis that the defendant is not an appropriate party in law or in fact. The filing of a Rule 12(b)(6) motion does not trigger automatic exposure to liability for attorneys' fees; a prospect that readily would have a chilling effect on civil litigants seeking relief through court processes. *See Druding*, 2019 WL 337580, at *3 ("[W]hile plaintiff-Relators would have been better served by conceding that some aspects of their claims were unsupported . . . the Court cannot say that their overall litigation strategy was clearly vexatious.").

FDD Bancorp's frustration at having to litigate this matter for several years is understandable. And the Court is sympathetic to the claimed expenditure of over $192,000 in legal fees by both FDD Bancorp and Fidelity Deposit & Discount Bank. But "the underlying circumstances do not rise to the level of egregiousness that Congress has required in both 31 U.S.C. § 3730(d)(4) or 28 U.S.C. § 1927 in order

to shift fees against a non-prevailing party." *Druding*, 2019 WL 337580, at *3.

Notably, a review of the redacted billing invoices provided by FDD Bancorp, Doc. 143 at Ex. A, identifies few entries that are readily attributable to FDD Bancorp alone. Rather, the review concludes that the two entities were defended collectively, with a fraction of the overall legal work devoted to raising (and re-raising) FDD Bancorp's grounds for dismissal, and subsequent pursuit of attorneys' fees. Thus, absent additional evidence to the contrary, the necessary conclusion is that the overwhelming majority of those fees would have been incurred defending Fidelity Deposit & Discount Bank anyway, even if FDD Bancorp was never included in this matter.[3]

"[A]n award of fees should be reserved for rare and special circumstances." *Atkinson*, 528 F. Supp. 2d at 543. FDD Bancorp has not established that those circumstances exist here, as there is no

---

[3] Relators fail to contest, or even address, the billing invoices and magnitude of attorneys' fees requested by FDD Bancorp. And the Court received no information on any proportional expenditures between the two entities in paying the fees. Thus, a determination of whether those requested fees are reasonable, and how much of the bill was footed by FDD Bancorp, under the fourth step of the inquiry, may well require further development of the record. As the undersigned recommends denial of the motion prior to reaching that stage, such measures are unnecessary.

showing that "the relator brought a duplicative suit under the FCA involving facts and issues that had already been decided in prior litigation . . . [or] had engaged in an extended pattern of harassment against the defendants prior to bringing suit." *Mikes*, 98 F. Supp. 2d at 527. Accordingly, FDD Bancorp falls short of establishing relators' claims as clearly frivolous, clearly vexatious, or brought for the primary purpose of harassment.

## IV.   Recommendation

For the forgoing reasons, **IT IS RECOMMENDED** that Fidelity D&D Bancorp, Inc.'s supplemental motion for attorneys' fees and expenses (Doc. 143) be **DENIED**. The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept,

27

reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

The failure to file timely objections to the foregoing Report and

Recommendation may constitute a waiver of any appellate rights.

Date:June 12, 2025                    ___*s/ Phillip J. Caraballo*___
                                       Phillip J. Caraballo
                                       United States Magistrate Judge